UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:20-CR-00025-GNS-HBB

UNITED STATES OF AMERICA                                        PLAINTIFF

v.

DAMIAN HOWARD                                                  DEFENDANT


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Objection (DN 43) to the Magistrate Judge's

Findings of Fact, Conclusions of Law, and Recommendation (DN 42) regarding Defendant's

Motion to Suppress (DN 31).  This matter is ripe for adjudication.

## I.      BACKGROUND

On August 4, 2020, law enforcement attempted to stop a vehicle driven by Defendant

Damian Howard ("Howard") on I-165 in Ohio County, Kentucky, but Howard fled.  (Suppression

Hr'g Tr. 14:10-20, DN 38).  During the approximately thirty-mile chase through three counties,

the vehicle, a rented Kia automobile, reached speeds of up to 130 m.p.h.  (Suppression Hr'g Tr.

14:10-22, 15:13-16).  The vehicle was ultimately disabled after law enforcement deployed spike

strips to puncture two of the vehicle's tires.  (Suppression Hr'g Tr. 14:15-17, 17:16-18).  After the

vehicle came to a stop in the right-of-way fence in a tree line along the roadway, Howard fled on

foot, leaving a woman and child in the car.  (Suppression Hr'g Tr. 5:3-5, 5:16-18, 17:21-24, 18:23-

19:3).  Howard was later apprehended after he was discovered hiding in an enclosed pool area

behind a residence.  (Suppression Hr'g Tr. 6:2-8).  A subsequent search of the vehicle resulted in

the discovery of a firearm with an obliterated serial number, which Howard was prohibited from possessing due to prior felony convictions.  (Suppression Hr'g Tr. 50:15-24; Indictment 1-2, DN 1).

A federal grand jury indicted Howard for possession of a firearm by a prohibited person and possession of a firearm with an obliterated serial number.  (Indictment 1-2).  Howard moved to suppress the firearm on the basis that it was seized by law enforcement without a warrant in violation of his Fourth Amendment rights.  (Def.'s Mot. Suppress 3-6, DN 31).

Following a hearing, findings of fact, conclusions of law, and a recommendation ("R. & R.") were issued by the Magistrate Judge[1] recommending that the motion be denied.  (R. & R. 8, DN 42).  As the R. & R. noted, it is undisputed that law enforcement searched and discovered the firearm without first having obtained a search warrant.  (R. & R. 3).  After considering the evidence presented during the hearing and the post-hearing briefs submitted by counsel, the Magistrate Judge concluded that Howard had abandoned the automobile, which permitted law enforcement to search the vehicle without a warrant.  (R. & R. 5-7).  As a result, the Magistrate Judge concluded that the firearm was not seized in violation of the Fourth Amendment.  (R. & R. 7).

---

[1] While Howard repeatedly refers to Magistrate Judge Brennenstuhl as the "Magistrate", no such position exists within the federal judiciary.  Over thirty years ago, Congress changed the title "United States Magistrate" to "United States Magistrate Judge."  *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 321, 104 Stat. 5089, 5117 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge . . . ."). This revision was intended to reflect the fact that Magistrate Judges are full-fledged federal judges. Just as one would not refer to a district judge as "District" or a bankruptcy judge as "Bankruptcy," "Magistrate" refers to jurisdiction, not title.  While no offense was intended or taken, the correct title is "Magistrate Judge" or simply "Judge."

## II.   STANDARD OF REVIEW

When ruling on an objection to a magistrate judge's R. & R. of disposition on a defendant's motion to suppress evidence, the Court conducts a de novo review.  *See* 28 U.S.C. § 636(b)(1)(A), (B); *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2004).

## III.   DISCUSSION

In his objection, Howard contends that the Magistrate Judge erred in concluding that Howard's actions constituted an abandonment of the vehicle.  (Def.'s Obj. 1-6, DN 43).  In addition, he maintains that the Magistrate Judge should have assessed the credibility of the law enforcement officers and determined whether his Fourth Amendment rights were violated.  (Def.'s Obj. 6).

The Fourth Amendment of the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  "[T]he ultimate touchstone of the Fourth Amendment is reasonableness . . . ."  *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted) (citations omitted).  "[R]easonableness generally requires the obtaining of a judicial warrant."  *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (citation omitted).  "The need for a warrant triggers the Fourth Amendment's 'Warrant Clause,' which also requires 'probable cause.'"  *United States v. Baker*, 976 F.3d 636, 642 (6th Cir. 2020) (citation omitted).  "The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search."  *Steagald v. United States*, 451 U.S. 204, 211 (1981).  "[S]earches conducted outside the judicial process, without prior approval by judge

or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specially established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

One such exception is abandonment. If property is abandoned, it "extinguishes any reasonable expectation of privacy the defendant might once have had in the property, together with any accompanying Fourth Amendment protections." *United States v. Foster*, 65 F. App'x 41, 46 (6th Cir. 2003) (citing *United States v. Oswald*, 783 F.2d 663, 666 (6th Cir. 1986)); *see also United States v. Martin*, 399 F.3d 750, 752 (6th Cir. 2005) ("[B]ecause a seizure does not occur when a mere show of authority occurs, but only when one yields to a show of authority, the [F]ourth [A]mendment does not apply to anything one may abandon while fleeing the police in an attempt to avoid a seizure." (citation omitted)). As the Sixth Circuit has explained:

> The concept of abandonment . . . is a Fourth Amendment issue and the "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Thus, the crucial inquiry is "whether governmental officials violated any legitimate expectation of privacy held by the [defendant]."

*United States v. Tolbert*, 692 F.2d 1041, 1044 (6th Cir. 1982) (alteration in original) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980)); *see also United States v. Labelle*, 390 F. App'x 539, 542 (6th Cir. 2010) ("[T]he notion of 'abandonment' turns upon whether a person can claim a continuing, legitimate expectation of privacy in the item at issue." (quoting *United States v. Robinson*, 390 F.3d 853, 873 (6th Cir. 2004))).

To determine whether property has been abandoned, a court must consider two elements:

> The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," whether . . . the individual has shown that "he seeks to preserve [something] as private." The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to

4

recognize as 'reasonable'"—whether . . . the individual's expectation, viewed objectively, is "justifiable" under the circumstances.

*Tolbert*, 692 F.2d at 1044 (internal alteration in original) (internal citations omitted) (citations omitted). "Whether a defendant abandoned the invaded property is a question of intent and may be inferred from the defendant's statements, conduct, and other objective indicia." *Labelle*, 390 F. App'x at 542 (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973)).

In this case, Howard's actions did not evidence an actual expectation of privacy. After his rented vehicle was disabled during the high-speed chase with law enforcement, Howard exited the vehicle and fled on foot. (Suppression Hr'g Tr. 5:3-5, 5:16-18, 17:21-24, 18:23-19:3). "The Sixth Circuit has held that a person abandons any expectation of privacy in an item when he discards the item while running from the police." *United States v. Newland*, No. 2:05-CR-11, 2006 WL 1133322, at *4 (S.D. Ohio Apr. 25, 2006) (citing *United States v. Collis*, 766 F.2d 219, 222 (6th Cir. 1985)). Numerous decisions within the Sixth Circuit have reached that same conclusion. *See, e.g.*, *Foster*, 65 F. App'x at 46 ("By the time the officers confiscated the phone, however, the defendant had fled from the scene and had abandoned the vehicle he was driving. Such abandonment extinguishes any reasonable expectation of privacy the defendant might once have had in the property, together with any accompanying Fourth Amendment protections."); *United States v. Mock*, No. 19-20839, 2020 WL 2300238, at *6 (E.D. Mich. May 8, 2020) (noting that the defendant "could not have reasonably assumed the interior of his vehicle would remain private when the vehicle was left running and unlocked on private property" when he fled from police) (citing *United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009)); *Newland*, 2006 WL 1133322, at *4 ("Here, defendant abandoned any expectation of privacy in the car when he exited the car at the alley and fled from officers."); *United States v. Payne*, No. 1:06-CR-143, 2006 WL 2583274, at *3 (W.D. Mich. Sept. 7, 2006) ("In this case, the vehicle was not taken from Payne.

Rather, Payne fled from it, leaving it with its door open, parked in a no-parking zone.  These facts are sufficient to demonstrate that Payne abandoned his vehicle and, thus had no expectation of privacy in it.").

Howard relies upon *United States v. Eden*, 190 F. App'x 416 (6th Cir. 2006), in arguing that he did not abandon the vehicle.  (Def.'s Obj. 3-4.)  As a sister court has noted, "[i]n *Eden*, the [Sixth Circuit] recognized that a defendant does not abandon his privacy interest in the contents of the vehicle simply because a vehicle is taken from the defendant."  *Payne*, 2006 WL 2583274, at *3.  While that principle is true, *Eden* is factually distinguishable.  In that case, a rental car was stopped by law enforcement, and the rental car company advised law enforcement that the driver did not have permission to drive the vehicle.  *See Eden*, 190 F. App'x at 417.  As a result, the car was towed, and law enforcement discovered a suitcase containing cocaine after obtaining consent from the rental agency to search the vehicle.  *See id.* at 417.  The Sixth Circuit held that the driver had "neither voluntarily abandoned nor affirmatively disclaimed her legitimate privacy interest in the suitcase."  *Id.* at 418.  Thus, *Eden* is distinguishable from the facts of the instant case.

While Howard criticizes the R. & R.'s reliance on *United States v. Gibbs*, No. 1:17-CR-207-CAP-CMS, 2018 WL 5624314 (N.D. Ga. Oct. 9, 2018), *adopted by* 2018 WL 6331341 (N.D. Ga. Dec. 4, 2018), that case is factually similar to the present case, and its holding is persuasive. (Def.'s Obj. 5 n.4).  In *Gibbs*, law enforcement attempted to stop the vehicle being driving by the defendant, who had outstanding arrest warrants.  *See id.* at *5.  The defendant attempted to elude law enforcement until one of the officers used a pit maneuver to disable the defendant's vehicle. *See id.*  The defendant climbed over his girlfriend in the passenger seat, exited the car on the passenger side, and fled.  *See id.*  His girlfriend, however, stayed with the vehicle, which was later searched by police.  *See id.* at *6.

The defendant subsequently challenged, *inter alia*, the warrantless search of the vehicle.

*See id.* at *9.  Upholding the search based upon the abandonment exception, the court reasoned:

> It is evident that in this case, Defendant abandoned any reasonable expectation of privacy that he may have had in the Saturn when, after finding himself on the receiving end of a pit maneuver, he climbed over [his girlfriend], jumped out of the passenger door, and fled on foot from police.  The fact that [his girlfriend] stayed with the vehicle is of no relevance to Defendant's privacy expectation.  While it is true that [his girlfriend] did not abandon her expectation of privacy in the car, it is equally true that Defendant did abandon his privacy expectations when he ran away.  Thus, Defendant does not have standing to challenge the search of the car, and the motion should be denied on this basis.

*Id.* at *10 (internal citation omitted).

The second element for abandonment examines "whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as 'reasonable'— whether . . . the individual's expectation, viewed objectively, is 'justifiable' under the circumstances."  *Tolbert*, 692 F.2d at 1044 (citations omitted).  As noted above, however, Howard's act of fleeing from law enforcement establishes that he relinquished any claim of privacy to the contents of the vehicle, notwithstanding the fact that the woman and child remained within the vehicle.  Therefore, there is no expectation which has to be weighed against public policy.  *See United States v. Friedmann*, No. 3:21-CR-00095, 2022 WL 950871, at *12 (M.D. Tenn. Mar. 29, 2022) ("Because Friedmann abandoned the space before the search occurred, he did not have a reasonable expectation of privacy in the space . . . .")

For these reasons, the R. & R. is well-reasoned, and the recommendation to deny Howard's motion is supported by the evidentiary record and the applicable law, which negates the necessity of addressing Howard's arguments as to witness credibility and any claimed violation of his Fourth Amendment rights.  Accordingly, the objection will be overruled.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Objection (DN 43) is **OVERRULED**, the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 42) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY**, and Defendant's Motion to Suppress (DN 31) is **DENIED**.

Greg N. Stivers, Chief Judge

United States District Court

August 3, 2022

cc:   counsel of record